IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCESCA TOSTI, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>CAHTO BLUE, LLC, et al.,<br><br>  Defendants. | Case No. 24-cv-06120-MMC<br><br>**ORDER GRANTING MOTION TO DISMISS; AFFORDING PLAINTIFFS LEAVE TO FILE SECOND AMENDED COMPLAINT; CONTINUING CASE MANAGEMENT CONFERENCE; DIRECTIONS TO PARTIES RE: USE OF NAMES OF MINORS** |

  Before the Court is the Motion to Dismiss, filed August 1, 2025, by defendants Cahto Blue, LLC ("Cahto Blue") and Kristina Warren ("Warren") (collectively, "Moving Defendants").[1]  Plaintiffs Francesco Tosti ("Tosti") and the Estate of James Reja ("Estate") have filed opposition, to which the Moving Defendants have replied. Having read and considered the parties' respective written submissions, the Court rules as follows.[2]

  In the operative pleading, the First Amended Verified Complaint ("FAC"), initially filed April 11, 2025 (see Doc. No. 46), and corrected April 14, 2025 (see Doc. No. 48),[3]

---

[1] The FAC also names the United States as a defendant. On May 19, 2025, however, Plaintiffs voluntarily dismissed their claims against the United States.

[2] By order filed September 16, 2025, the Court took the matter under submission.

[3] The Moving Defendants refer to the April 14 filing as the "Second Amended Complaint." Although the "CORRECTION" (see Dkt. entry 48) consists of an additional three lines comprising a substantive allegation (compare Doc. No. 46 ¶ 27, with Doc. No. 48 ¶ 27), the Court, for ease of reference, refers to the challenged pleading as the FAC.

Plaintiffs allege that, in May 2016, James Reja,[4] who was married to Tosti, purchased "as a married man, as his sole and separate property," certain real property in Mendocino County, California, referred to by Plaintiffs as "the Sugarloaf Property" (see FAC ¶ 13; Ex. 1), and that, on July 31, 2020, Reja transferred the Sugarloaf Property to Cahto Blue, an LLC that Plaintiffs allege is controlled by Warren (see FAC ¶ 23, Ex. 9), an individual that, Plaintiffs contend, had a child with Reja during the course of an "extra-marital affair" (see FAC ¶ 16).

According to Plaintiffs, Reja transferred the property without having the "capacity to enter into legal agreements" (see FAC ¶ 22), or, alternatively, Warren "fraudulent[ly] induce[d]" Reja into transferring the Sugarloaf Property to Cahto Blue (see FAC ¶ 23), or, as yet a third alternative, Reja and the Moving Defendants engaged in the transfer to "defraud" Tosti, as well as the federal government (see FAC ¶ 17).[5] Plaintiffs further allege that, "[b]ut for" such transfer, the Sugarloaf Property, as of November 13, 2023, the date of Reja's death, "would belong to the Estate . . . , to be distributed to [Reja's] heirs." (See id.) Based on said allegations, Plaintiffs assert six Causes of Action against the Moving Defendants.

By the instant motion, the Moving Defendants argue that the six claims asserted against them are subject to dismissal. The Court considers those claims, in turn.

**A. First Cause of Action ("Quiet Title")**

As pleaded, the First Cause of Action is derivative of the Second, Third, Fourth, and Fifth Causes of Action. As set forth below, the Second through Fifth Causes of

---

[4] At times, Plaintiffs refer to the decedent as "James Reja" (see, e.g., FAC ¶ 4), at other times as "James Rega" (see, e.g., FAC ¶ 10), and, sometimes, as both in the same paragraph (see, e.g., FAC ¶ 17). For the sake of clarity, the Court will use the spelling in the caption, namely "Reja," which is also the spelling used by the state court administering the Estate. (See FAC Ex. 2.)

[5] According to Plaintiffs, the federal government, in 2019, began "surveillance" of Reja, Warren, and others "in connection with allegations of drug trafficking and money laundering." (See FAC ¶ 17.) Plaintiffs appear to allege that Reja was aware of the surveillance in 2019. (See id. (alleging Reja sought to transfer the Sugarloaf Property to Cahto Blue "[a]s a result of the 'heat' [he] began to feel").)

2

1  Action are subject to dismissal, and, accordingly, the First Cause of Action is subject to
2  dismissal.

3  **B.  Second Cause of Action ("Cancellation of Written Instrument")**

4  By the Second Cause of Action, Plaintiffs seek to cancel, pursuant to Civil Code
5  § 3412, the transfer of the Sugarloaf Property from Reja to Cahto Blue, on the ground
6  that "Warren knew, or should have known, [that] Reja had no capacity to enter into legal
7  agreements, or consent to/make legal decisions during this timeframe."  (See FAC ¶¶ 39,
8  41.)

9  Under § 3412, "[a] written instrument, in respect to which there is a reasonable
10 apprehension that if left outstanding it may cause serious injury to a person against
11 whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be
12 delivered up and canceled."  See Cal. Civ. Code § 3412.  "A contract which is challenged
13 on the ground of incompetency is ordinarily not void, but merely voidable."  Hellman
14 Commercial Trust & Savings Bank v. Alden, 206 Cal. 592, 603 (1929).  "The mental
15 incapacity to avoid such a contract must amount to an inability to understand the nature
16 of the contract and to appreciate its probable consequences."  Id.

17 The Moving Defendants argue the Second Cause of Action is subject to dismissal
18 on the grounds that Plaintiffs have failed to plead sufficient facts to support such claim
19 and that the claim is barred by the applicable statute of limitations.  (See Defs.' Mot. at
20 19:13-25:11.)

21 One basis for the claim is that Reja, on a date undisclosed in the FAC, began
22 taking Vicodin and, on another date undisclosed in the FAC, became "addicted" to it.
23 (See FAC ¶ 22.)  Plaintiffs fail to plead, however, any facts to support a finding that Reja's
24 alleged addiction to Vicodin in some manner caused him to lose the ability to understand
25 the nature of the contract at issue, namely, a grant deed, or its probable consequences,
26 i.e., a transfer of title.

27 Another basis for the claim is that Reja, beginning in April 2020, told Tosti he was
28 "experienc[ing]" symptoms that included what he described as "severe brain fog," "brain

glitches," "hallucinations," and "not knowing who he was" (see FAC ¶ 21), which symptoms he told Tosti he "believed" were "attributable to exposure to toxic mold at his Las Palmas residence" (see id.)[6]  These allegations, however, fail to support a finding that Reja "had no capacity to enter into legal agreements" on July 31, 2020.  (See FAC ¶ 41.)  For example, assuming Reja was so exposed and did experience the claimed symptoms, Plaintiffs do not allege Rega experienced them on a daily basis, or, if sporadic, that he was experiencing them on July 31, 2020, the date he signed the Grant Deed.[7]

Next, with respect to the statute of limitations, the applicable limitations period is four years.  See Trubody v. Trubody, 137 Cal. 172, 174 (1902) (holding claim to set aside transfer of real property on ground transferor was "mentally incompetent" is subject to four-year limitations period).  Here, the claim accrued on July 31, 2020, the date of the transfer, and the initial Complaint was filed August 29, 2024, more than four years later.

To the extent the claim is brought on behalf of Tosti, Plaintiffs, relying on the discovery rule, cite to their allegation that Tosti did not learn, until October 2023, that Reja had transferred the Sugarloaf Property to Cahto Blue.  (See FAC ¶ 27.)  The Grant Deed, however, was recorded with Mendocino County on July 31, 2020 (see FAC Ex. 9), which event provides constructive notice of the transfer.  See General Bedding Corp. v. Echevarria, 947 F.2d 1395, 1397 (9th Cir. 1991) (applying California law; holding when a plaintiff "has the opportunity to obtain knowledge from sources open to his investigation (such as public records or corporation books), the statute commences to run"; explaining limitations period "begins to run, when [the plaintiff] has actual *or constructive* notice of its

---

[6] The FAC includes no other reference to a "Las Palmas residence," such as when Reja lived there.

[7] Indeed, Plaintiffs allege that, from "early 2017" through "late 2022," Reja and Tosti "designed and physically build [a] structure that would enable them to live on the Sugarloaf Property" and that "they spent time on the property each month in order to complete the construction of the primary residence" (see FAC ¶ 26), allegations suggesting Reja, in July 2020, had the ability to understand the nature and effect of a contract.

4

claims") (internal quotation and citation omitted; emphasis in original); Lauckhart v. El Macero Homeowners Ass'n, 92 Cal.App.5th 889, 901 (2023) (holding "a recorded written instrument that affects title to real property provides constructive notice of its contents").

To the extent the claim is brought on behalf of the Estate, although the Estate, theoretically, might be entitled to tolling based on Reja's lack of "legal capacity to make decisions" at "the time title first descend[ed] or accrue[d]," see Cal. Civ. Proc. Code § 328 (setting forth bases for tolling applicable to claims for recovery of real property), the FAC fails to include facts to support a finding that Reja lacked such capacity.

Accordingly, the Second Cause of Action is subject to dismissal.

**C. Third Cause of Action ("Fraudulent Transfer")**

In the Third Cause of Action, Plaintiffs seek to "unwind" the July 31, 2020, transfer, on the ground that, in transferring the property, Reja, Cahto Blue, and/or Warren acted with "actual intent to hinder, delay, or defraud . . . Tosti, a creditor." (See FAC ¶ 44.) In their Opposition, Plaintiffs explain said claim is pleaded under the Uniform Fraudulent Transfer Act ("UFTA"). See Civil Code § 3439.04(a)(1) (providing "[a] transfer made . . . by a debtor is voidable as to a creditor, . . . if the debtor made the transfer . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor").

The Moving Defendants argue the Third Cause of Action is subject to dismissal on the grounds that Plaintiffs lack statutory standing and otherwise have failed to plead sufficient facts to support such claim, and, additionally, that the claim is barred by the applicable statute of limitations. (See Defs.' Mot. at 6:1-8:18.)

In their Opposition, Plaintiffs state the "Third Cause of Action does not, at present, allege all of the necessary facts, nor properly state all of the elements of such a claim." (See Pls.' Opp. at 12:7-8.) The Court agrees. In particular, Plaintiffs will need to allege, if they can do so, facts to support a finding that Tosti is a "creditor of the decedent or the estate," that the Estate is bringing the claim on behalf of Tosti, and that the Estate "has insufficient funds to pay creditors." See Cal. Prob. Code § 9653(a) (setting forth circumstances under which Estate can bring action on behalf of creditors, including claim

alleging decedent's transfer of property "is voidable as to creditors").

Further, although Plaintiffs argue the Third Cause of Action is not barred by the applicable four-year statute of limitations, the Court, for the reasons set forth above with respect to the Second Cause of Action, disagrees. Specifically, a claim under § 3439.04 must be brought "not later than four years after the transfer was made . . . or, if later, not later than one year after the transfer . . . was or could reasonably have been discovered by the claimant." See Cal. Civ. Code § 3439.09(a). Here, the subject transfer was made on July 31, 2020, more than four years before the initial Complaint was filed, and, as discussed above, Tosti had constructive notice of the transfer as of that same date.[8]

Accordingly, the Third Cause of Action is subject to dismissal.

**D. Fourth Cause of Action ("Fraud (Intentional Misrepresentation)")**

Plaintiffs, in the Fourth Cause of Action, allege Warren made false statements to Reja, which Reja relied upon when transferring the Sugarloaf Property to Cahto Blue, i.e., that Reja was a victim of fraud.

The Moving Defendants argue the Fourth Cause of Action is subject to dismissal on the grounds that Plaintiffs have failed to plead sufficient facts to support such claim and, additionally, that the claim is barred by the applicable statute of limitations. (See Defs.' Mot. at 8:19-18:23.)[9]

In their Opposition, Plaintiffs state they can amend to "include additional facts as to

---

[8] In their Opposition, Plaintiffs correctly assert that a cause of action to set aside a fraudulent conveyance "could commence on a date other than the date of the fraudulent transfer." (See Pls.' Opp. at 13:17-20.) Said principle, however, applies where a creditor opts to "pursue [an] unmatured claim to judgment, followed by a suit to set aside the fraudulent transfer," see Cortez v. Vogt, 52 Cal. App. 4th 917, 931 (1997), in which case "the limitations period [starts] to run from the time the underlying judgment becomes final," see id. at 929. Plaintiffs, by contrast, have chosen a different "option," namely, to pursue their unmatured claim by an action brought pursuant to the UFTA, under which "it is no longer necessary that a creditor reduce his claim to judgment," see id. at 929-30 (internal quotation and citation omitted), and such an action is subject to the limitations period set forth § 3439.09.

[9] As set forth below, the FAC does not clearly identify the statement(s) on which Reja allegedly relied. Consequently, the Court is not at this time in a position to determine whether the claim is time-barred.

6

the inducement and the Who, What, When, and Where" (see Pls.' Opp. at 14:4-17), as well as additional facts "to address causation" (see id. at 15:8-17).[10]  The Court finds Plaintiffs need such additional facts to plead a viable claim, as the statement(s) by Warren on which Plaintiffs appear to rely are, at best, paraphrases, and Plaintiffs do not identify with any particularly when and where the statements were made.  See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (holding "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged) (internal quotation and citation omitted); Fed. R. Civ. P. 9(b) (providing "[i]n alleging fraud . . ., a party must state with particularity the circumstances constituting the fraud").  Additionally, the FAC lacks facts to support the conclusory allegation that Reja relied on the statement(s) made by Warren.  (See FAC ¶ 51); Vess, 317 F.3d at 1105 (holding "indispensable elements" of fraud claim include "justifiable reliance") (internal quotation and citation omitted); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (holding "conclusory statements" fail to state cognizable claim for relief).

Accordingly, the Fourth Cause of Action is subject to dismissal.

**E.  Fifth Cause of Action ("Fraud (Fraudulent Inducement/Fraud in the Inception of Execution of Contract")**

The Fifth Cause of Action is based on the same factual allegations supporting the Second Cause of Action, i.e., that Warren "knew, or should have known, [Reja] lacked the mental capacity to execute documents/sign contracts that were legally enforceable due to his exposure to toxic mold and . . . his abuse of Vicodin."  (See FAC ¶ 55.)

Accordingly, the Fifth Cause of Action is subject to dismissal for the reasons stated above with respect to the Second Cause of Action.

---

[10] In the portions of the Opposition cited above, Plaintiffs' refer to the "Fifth Cause of Action."  As the arguments in those portions respond to the Moving Defendants' arguments as to the Fourth Cause of Action, and Plaintiffs, in a later section of their Opposition, address the Moving Defendants' arguments pertaining to the Fifth Cause of Action, the Court understands the above-cited portions to consist of, or at least include, Plaintiffs' arguments pertaining to the Fourth Cause of Action.

**F. Seventh Cause of Action ("Declaratory Relief")**[11]

Plaintiffs, in the Seventh Cause of Action, seek a determination as to what rights "the parties" have in the Sugarloaf Property. Plaintiffs' theories as to why Tosti and/or the Estate should be deemed the owner of the Sugarloaf Property are set forth in the Second through Fifth Causes of Action.

As set forth above, the Second through Fifth Causes of Action are subject to dismissal, and, accordingly, the Seventh Cause of Action likewise is subject to dismissal.

## CONCLUSION

For the reasons stated above, the Moving Defendants' motion to dismiss is hereby GRANTED, and the FAC is hereby DISMISSED. If Plaintiffs wish to file a Second Amended Complaint for purposes of curing any of the deficiencies noted above, Plaintiffs shall file such amended pleading no later than December 5, 2025.

In light of the above, the Case Management Conference is hereby CONTINUED from November 7, 2025, to March 6, 2026, at 10:30 a.m. The parties shall file a Joint Case Management Statement no later than February 27, 2026.

Lastly, the Court notes that all parties have been using the full names of minors in their respective filings. The parties are hereby DIRECTED to comply henceforth with the Federal Rules of Civil Procedure, which provide that, "in an electronic or paper filing with the court that contains . . . the name of an individual known to be a minor . . ., a party or nonparty making the filing may include only . . . the minor's initials." See Fed. R. Civ. P. 5.2(a)(3).

**IT IS SO ORDERED.**

Dated: November 3, 2025

MAXINE M. CHESNEY
United States District Judge

---

[11] The Sixth Cause of Action had been asserted only against the United States.